# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH BUTELA, individually and on behalf
of all others similarly situated,

        Plaintiff,

      v.

MIDLAND CREDIT MANAGEMENT,
INC.,

        Defendant.

Case No. 20-cv-1612

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## <u>MOTION FOR CLASS CERTIFICATION</u>

Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
(412) 223-5740 – office
(412) 626-7101 – fax
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................. 2

III.   THE PROPOSED CLASS .................................................................. 4

IV.    ARGUMENT ....................................................................................... 4

       A.    The Class Satisfies The Rule 23(a) Requirements ................................. 4

             i.     The Class Satisfies Numerosity ............................................... 4

             ii.    The Class Satisfies Commonality ............................................ 5

             iii.   The Class Satisfies Typicality ................................................. 5

             iv.    The Class Satisfies Adequacy ................................................. 6

       B.    The Class Satisfies The Rule 23(b)(3) Requirements ........................... 7

             i.     The Class Satisfies Predominance ........................................... 7

             ii.    The Class Satisfies Superiority ............................................. 10

             iii.   The Class Satisfies Ascertainability ..................................... 11

V.     CONCLUSION .................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Al v. Van Ru Credit Corp.*, No. 17-cv-01738,
   2018 U.S. Dist. LEXIS 164086 (E.D. Wisc. Sept. 25, 2018) ................................ 10

*Allen v. Holiday Universal*, 249 F.R.D. 166 (E.D. Pa. 2008) ...................................... 6

*Avila v. Van Ru Credit Corp.*, No. 94-cv-03234,
   1995 U.S. Dist. LEXIS 461 (N.D. Ill. Jan. 31, 1995) ......................................... 13

*Bitzko v. Weltman, Weinberg & Reis Co.*, No. 17-cv-00458,
   2019 U.S. Dist. LEXIS 161495 (N.D.N.Y. Sep. 23, 2019) .................................... 9

*Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69 (E.D. Pa. 2018) .................................... 14

*Butterline v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 15-cv-01429,
   2018 U.S. Dist. LEXIS 59433 (E.D. Pa. Apr. 6, 2018) ................................ 15

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) .................................... 7, 11, 13, 14

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 499 (E.D. Pa. 2009) ............................ 6

*City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*,
   867 F.3d 434 (3d Cir. 2017) .................................... 13, 14

*Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014) .......................... 8

*Grubb v. Green Tree Servicing, LLC*, No. 13-cv-07421,
   2017 U.S. Dist. LEXIS 117465 (D.N.J. July 26, 2017) .................................... 15

*Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020) .................................... 12, 14

*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666 (N.D. Cal. 2011) .......................... 9

*Howard v. LVNV Funding, LLC*, No. 19-cv-00093,
   2020 U.S. Dist. LEXIS 34697 (W.D. Pa. Feb. 28, 2020) .................................... 8

*In re Celgene Corp. Sec. Litig.*, No. 18-cv-04772,
   2020 U.S. Dist. LEXIS 230548 (D.N.J. Nov. 25, 2020) .................................... 15

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
   795 F.3d 380 (3d Cir. 2015) .................................... 5, 6, 11, 14

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
   317 F.R.D. 675 (N.D. Ga. July 12, 2016) ........................................................ 15

*In re Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016) ..................................... 4

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) .......................................................................... 6

*Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114 (E.D.N.Y. 2015) ..................................... 13

*Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620 (N.D. Ill. 2007) ............................... 15

*Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366 (D. Utah 2020) ................... 9

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ....................................................... 6

*Linehan v. Allianceone Receivables Mgmt., Inc.*, No. 15-cv-01012,
   2016 U.S. Dist. LEXIS 194091 (W.D. Wash. Nov. 22, 2016) ............................. 13

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ........................... 10, 16

*McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246 (E.D. Pa. 2006) ............................ 6

*McIntyre v. RealPage, Inc.*, 336 F.R.D. 422 (E.D. Pa. 2020) ................................... 14

*Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ........................................................ 5, 6

*Perez v. First Am. Title Ins. Co.*, No. 08-cv-01184,
   2009 U.S. Dist. LEXIS 75353 (D. Ariz. Aug. 12, 2009) ................................... 16

*Sadler v. Midland Credit Mgmt., Inc.*, No. 06-cv-05045,
   2009 U.S. Dist. LEXIS 26771 (N.D. Ill. Mar. 31, 2009) ................................... 16

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
   No. 16-cv-00046 & No. 16-cv-00447, 2021 U.S. Dist. LEXIS 93752
   (D.R.I. May 18, 2021) .................................................................................. 15

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) ............................................ 6

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ............................ 9

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...................................... 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 5

*Yazzie v. Gurley Motor Co.*, No. 14-cv-00555,
2015 U.S. Dist. LEXIS 182068 (D.N.M. Oct. 30, 2015) ....................................... 9

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ........................... 13

**<u>Rules</u>**

Fed. R. Civ. P. 23(a) ........................................................................................... 4

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 4

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 5

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 5

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 6

Fed. R. Civ. P. 23(b)(3) ............................................................................. 4, 7, 10

**<u>Statutes</u>**

15 U.S.C. § 1692a(3) .......................................................................................... 9

15 U.S.C. § 1692a(5) .......................................................................................... 9

15 U.S.C. § 1692k(a) .......................................................................................... 8

15 U.S.C. § 1692k(b) .......................................................................................... 8

I.    **INTRODUCTION**

This case is a putative class action filed under the Fair Debt Collection Practices Act ("FDCPA"). It concerns a letter that Midland sent to Butela and other Pennsylvania consumers. The letter presented a settlement offer and represented that a judgment could be awarded before the offer expired. The problem is that no judgment could be awarded against Butela or any class member before the offer expired because no dispositive proceeding was scheduled to occur in any lawsuit filed against Butela or any class member before Midland's settlement offer could expire. In fact, when Midland sent the letter at issue to Butela, Midland had not even sued Butela on the debt identified in the letter he received.

The Court should certify this case as a class action because this case concerns a uniform misrepresentation made to similarly situated consumers. Midland already stipulated to the fact that there are a sufficient number of Pennsylvania residents who, like Butela, received a letter that presented a settlement offer, had the letter represent that a judgment could be awarded before the expiration date of the offer, and did not have a dispositive proceeding scheduled to occur in any lawsuit filed against them before the settlement offer could expire. Whether it was false or deceptive for Midland to represent to these persons that a judgment could be awarded before the expiration date of Midland's settlement offer, even though no dispositive proceeding was scheduled to occur before the expiration date of the settlement offer, is common to Butela and each class member. There is a single common answer to this fundamental question, and that answer will drive the resolution of Butela's claim and the claims of each of the class members. Because the fundamental question at the core of the claims of Butela and the class members is common to each of them, and predominates over any individual issues, the Court should certify this case as a class action under Rule 23(a) and (b)(3).

1

## II.    **FACTUAL BACKGROUND**

At some time in the past, Capital One Bank issued Butela a credit card (the "Account"). (Butela Dec. ¶ 5.)[1] Butela used the Account for personal, family, and/or household purposes. (*Id.* at ¶ 6.) Midland claims it purchased the Account. (*Id.* at Ex. 1.)

On August 15, 2020, Midland sent Butela a letter in an attempt to collect the Account (Butela Dec., Ex. 1.) The letter presented a settlement offer and stated the offer would expire in thirty days. (*Id.*) The letter also represented that "[a] judgment could be awarded by the court before the expiration of the discount offer listed in this letter[,]" and that "[a] judgment may include costs and post-judgment interest which may increase the balance owed." (*Id.*)

Butela claims Midland's letter was false, deceptive, and misleading. A judgment could not have been entered against Butela before Midland's settlement offer expired because there was no dispositive proceeding scheduled to occur in any lawsuit filed against Butela before the offer expired. (Butela Dec. ¶¶ 9-11.) In fact, Midland did not sue Butela on the Account until a month after Midland sent him the letter at issue. (Exhibit A.)[2]

The letter sent to Butela was generated using an automated process to populate a template letter. The template letter presents a settlement offer and, by default, represents that the offer will expire thirty days from the date listed on the letter. (Exhibit B.) An automated system populates the template letter with the judgment language that was included in the letter Butela received if a consumer's file includes an "active litigation" tag and does not include a "judgment" tag. (Canez Dep. 68:2-75:6.)[3]

---

[1] "Butela Dec." refers to the Declaration of Joseph Butela.

[2] When Midland did sue Butela, a judgment was entered against Midland. (Exhibit A.)

[3] "Canez Dep." refers to the Rule 30(b)(6) deposition of Midland, for which Midland designated Bernadette Canez. A true and correct copy of the deposition transcript is attached as Exhibit C.

The automated process used to generate the template letter at issue was not sufficient to ensure the letter was accurate. Midland's automated system cannot know whether consumers are at risk of having judgments entered against them before the default thirty-day expiration period because the system merely identifies whether a consumer's file has an "active litigation" tag. All this does is determine that a consumer's file has an "active litigation" tag. It does not identify a case number to ensure that a lawsuit was actually filed, it does not identify whether a dispositive proceeding is scheduled to occur with respect to that case number, and it does not determine whether the proceeding is scheduled to occur before the default thirty-day expiration period of a settlement offer. Each of these things are necessary to ensure that the template letter at issue is accurate. But, as Midland admits, the automated system Midland used to generate template letters "doesn't have the ability to do that." (Canez Dep. 73:9-10.) Midland also admits it "has no procedures for determining that a judgment may be awarded against individuals to which [Midland] mailed or caused to be mailed [the template letters at issue]." (Exhibit D, Response to Request for Production No. 3.)

Had Midland coded its automated system properly, neither Butela nor any class member would have received the template letter at issue. For example, if Midland coded its system to identify case numbers and the dispositive proceedings scheduled with respect to case numbers, the system would have realized Butela had not been sued and that, as a result, no hearing could have been pending and no judgment could be entered. The system would have acted similarly for those consumers who had been sued but did not have dispositive proceedings scheduled before their settlement offers were set to expire. Had Midland's automated system been coded this way, the letter at issue would not have been sent to any consumer who could not have had a judgment entered against them before their settlement offer was set to expire.

### III.    THE PROPOSED CLASS

Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Butela seeks to certify the following class: "All individuals who, within the applicable statute of limitations, received a letter from Defendant that made one or more settlement offer(s), listed an expiration date for the offer(s), and stated a judgment could be awarded before the expiration date of the listed offer(s), despite the fact that there was no dispositive proceeding scheduled in any lawsuit filed against the recipient of the letter before the expiration date of the listed offer(s)."

### IV.    ARGUMENT

In this case, Butela must satisfy the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Fed. R. Civ. P. 23(a), (b)(3). As explained below, the class satisfies all relevant Rule 23 requirements.

#### A.    The Class Satisfies The Rule 23(a) Requirements.

Under Rule 23(a), a movant must demonstrate that: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the class representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All Rule 23(a) requirements are satisfied here.

##### i.    The Class Satisfies Numerosity.

To establish numerosity, a class must be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Numerosity generally is satisfied if a class has more than forty members. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016).

Numerosity is satisfied here because Midland stipulated to numerosity. (Doc. 23.)

### ii.    The Class Satisfies Commonality.

To establish commonality, common questions of law and fact must exist. Fed. R. Civ. P. 23(a)(2). The focus is "on whether the defendant's conduct was common as to all of the class members." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015). "[A]s long as all putative class members were subjected to the same harmful conduct . . . , Rule 23(a) will endure many legal and factual differences among the putative class members." *Id.* "What matters . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted).

Commonality is satisfied here. Midland presented a settlement offer to Butela and each class member and represented that a judgment could be entered before the offer expired, even though no dispositive proceeding was scheduled to occur before the offer was set to expire. Whether it was misleading to represent that a judgment could be entered before a settlement offer expired, even though no dispositive hearing was scheduled to occur before the offer could expire, is common to Butela and each class member. It is either false or deceptive to represent that a judgment could be entered before a dispositive proceeding could occur, or it is not. The answer to this question is the same for Butela and each class member and will drive the resolution of each of their claims. Commonality is satisfied.

### iii.    The Class Satisfies Typicality.

To establish typicality, the claims or defenses of the representative parties must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement[.]" *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). What matters is that the class

representative's "claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members," and that the claims of the class representative and the members of the class are "based on the same legal theory." *Id.*

Typicality is satisfied here. Butela and the class challenge a uniform misrepresentation: Midland presented a settlement offer to Butela and each class member and claimed a judgment could be entered before the offer expired, even though no dispositive proceeding was scheduled before the offer was to expire. Butela's challenge to this misrepresentation is typical of the members of the class and is based on the same legal theory. Typicality is satisfied.

### iv.    The Class Satisfies Adequacy.

To establish adequacy, the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy primarily examines "the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank*, 795 F.3d at 392; *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). As applied to class representatives, adequacy does not concern "whether [the] plaintiff personally derived the information pleaded in [a] complaint or whether he will personally be able to assist his counsel." *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982). Nor does "a class representative's lack of knowledge about his case . . . [render] him an inadequate representative." *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 499 (E.D. Pa. 2009) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966)); *Allen v. Holiday Universal*, 249 F.R.D. 166, 185 (E.D. Pa. 2008) (same); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 253 (E.D. Pa. 2006) (same). So long as class representatives understand their duties to the class, are willing to work to fulfill those duties, and have no interests that conflict with those of the class, they are adequate to represent the class's interests. *Lewis*, 671 F.2d at 789.

6

Adequacy is satisfied here. Butela will protect the interests of the class and fulfill his duties to litigate this matter on their behalf. Butela understands he must look out for his fellow class members and protect their interests. (Butela Dec. ¶¶ 13-21.) Butela has fulfilled these duties by participating in calls and meetings, sitting for a deposition, participating in mediation, and providing facts to help draft discovery, the complaint, and the class certification motion. (Abramowicz Dec. ¶¶ 5, 10.)[4] Regarding undersigned counsel, they have the experience and ability to represent the class and litigate this matter on their behalf. The attorneys at East End Trial Group have been certified as class counsel three times before and have worked on myriad class cases throughout the years. (*Id.* at ¶ 12.) They also have litigated more than one hundred FDCPA cases and are currently litigating over fifteen putative FDCPA class actions in each Pennsylvania federal court. (*Id.* at ¶ 11.) Counsel is well-versed in class litigation and the law and legal theories at issue. Adequacy is satisfied.

**B.** **The Class Satisfies The Rule 23(b)(3) Requirements.**

For a movant to certify a Rule 23(b)(3) class, he must demonstrate that the questions of law or fact common to the class members predominate over those questions affecting only individual class members, and that a class action is superior to other methods available to adjudicate the matter. Fed. R. Civ. P. 23(b)(3). A movant also must satisfy the implicit "ascertainability" requirement and prove the class is ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). All Rule 23(b)(3) requirements are satisfied here.

**i.** **The Class Satisfies Predominance.**

To establish predominance, common questions of law and fact must predominate over individual issues. Fed. R. Civ. P. 23(b)(3). This inquiry "asks whether the common, aggregation-

---

[4] "Abramowicz Dec." refers to the Declaration of Kevin Abramowicz.

enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately[.]" *Id.*

"To state a claim for a violation of the FDCPA, a plaintiff must show: (1) he or she is a debtor; (2) the defendant is a debt collector; (3) the defendant's acts constitute an attempt to collect a debt under the FDCPA; and (4) those acts violate an FDCPA provision." *Howard v. LVNV Funding, LLC*, No. 19-cv-00093, 2020 U.S. Dist. LEXIS 34697, at *14 (W.D. Pa. Feb. 28, 2020) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). After a claim is stated, a plaintiff may recover statutory damages. 15 U.S.C. §§ 1692k(a), (b). Here, all elements of the FDCPA claim, as well as the availability of statutory damages, are common to Butela and the class members, and predominate over individual issues.

First, the issue of whether Midland violated the FDCPA is a common issue. Butela and each class member are in the same situation: Midland presented a settlement offer and claimed a judgment could be entered before the offer expired, even though a dispositive proceeding could not have occurred before the offer expired. If it was false or deceptive for Midland to claim a judgment could be entered before a settlement offer expired, even though no dispositive hearing was scheduled to occur before the expiration period, Butela and each class member have a claim. Put differently, Butela's claim rises and falls with the claims of the class members. Accordingly, whether Midland violated the FDCPA is common to Butela and the class.

Second, the issue of whether Midland is a debt collector is a common issue. Midland took the same action with respect to Butela and the class: Midland allegedly bought their debts; Midland

then attempted to collect their debts by sending collection letters; and Midland claimed a judgment could be entered against Butela and the class before Midland's settlement offers expired, even though no dispositive hearings were scheduled to occur before Midland's offers could expire. Since Butela and the class were subjected to the same conduct, whether Midland was acting as a debt collector is common to Butela and the class.

Third, the availability and amount of statutory damages is a common issue. "Congress has devised a generally applicable formula for class action damages under the FDCPA, one which caps damages at $500,000 and provides that district courts consider, among other factors, the scope of the violations of the FDCPA as well as the number of individuals implicated by fraudulent debt collection practices." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87-88 (2d Cir. 2015). The availability and amount of statutory damages is common to Butela and the class.

Fourth, although the issues of whether Butela and the class members are "consumers" and whether their accounts are "debts" under the FDCPA generally concern individualized inquires, these issues are common in this case. Midland "purchases and services on charged-off accounts" and testified that "all of those accounts [are] consumer-related accounts." (Canez. Dep. 113:3-9.) Since Midland only purchases consumer-related accounts, there is no need for an individual inquiry to determine how any account was used to ascertain whether it falls within the scope of the FDCPA. *See* 15 U.S.C. §§ 1692a(3), (5). Whether Butela and the class members are "consumers," and whether their accounts are "debts," is common to Butela and the class.[5]

---

[5] Even if these issues were individualized, they would not predominate. *See, e.g.*, *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 383 (D. Utah 2020); *Bitzko v. Weltman, Weinberg & Reis Co.*, No. 17-cv-00458, 2019 U.S. Dist. LEXIS 161495, at *35-44 (N.D.N.Y. Sep. 23, 2019); *Yazzie v. Gurley Motor Co.*, No. 14-cv-00555, 2015 U.S. Dist. LEXIS 182068, at *12-18 (D.N.M. Oct. 30, 2015); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 680 (N.D. Cal. 2011).

Ultimately, Butela and the class members share the "same essential characteristic" of being told that a judgment could be entered against them before a date certain, even though no dispositive proceeding[6] could occur before that date. *See, e.g.*, *Al v. Van Ru Credit Corp.*, No. 17-cv-01738, 2018 U.S. Dist. LEXIS 164086, at *6-7 (E.D. Wisc. Sept. 25, 2018) (certifying class covering various creditors where class members shared "same essential characteristics" to prove a uniform misrepresentation false or deceptive); *cf. Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types.") Because Butela and the class members share this same essential characteristic, whether Midland's conduct was false or deceptive is common to all of them and predominates over any individual issues that may arise. Predominance is satisfied.

### ii.    The Class Satisfies Superiority.

To establish superiority, class treatment must be superior to other methods available for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)

---

[6] Determining whether a proceeding is "dispositive" is not an individualized issue. In counsel's experience defending consumers against collection lawsuits, Midland files the overwhelming majority of its collection lawsuits in Magisterial District Court. These courts do not have motions practice and only have one scheduled hearing, which is equivalent to a trial and is a dispositive proceeding. Because all but a few of Midland's lawsuits are filed in Magisterial District Courts, there is no need to conduct an individual review to determine if a hearing is dispositive—all Magisterial District Court hearings are dispositive. Additionally, for the few cases Midland files in the Courts of Common Pleas, these cases go to arbitration. In counsel's experience, the only dispositive proceedings scheduled in these cases that can result in a judgment against a consumer are arbitration hearings. So, to the extent a consumer files preliminary objections or some other motion that results in a non-dispositive proceeding, it would be a simple, ministerial task to separate these proceedings from arbitration hearings. Accordingly, to the extent Midland argues that it is individualized to decide whether a proceeding is "dispositive," this is inaccurate for the overwhelming majority of class members. And, for the few class members for which this may be true, it is a simple, ministerial task to determine whether a hearing is dispositive.

provides a non-exhaustive list of factors to consider in determining superiority, including: "the class members' interest in individually controlling the prosecution of separate actions; the extent and nature of any similar litigation already commenced by class members; the desirability of concentrating the litigation in a particular forum; and the difficulties likely to be encountered in the management of a class action." *In re Cmty. Bank*, 795 F.3d at 408-09.

Here, the relevant factors demonstrate class treatment is superior. First, the members of the class likely lack the incentive to control the prosecution of separate actions. They also may be unaware of their claims given that this case challenges deception and Midland's failure to disclose the truth. Second, to counsel's knowledge, similar litigation is not pending against Midland in Pennsylvania. Third, it is desirable to concentrate the claims of Butela and the class in a single action to prevent the potential for duplicative and conflicting rulings concerning the common and predominant question of whether Midland's uniform representations and course of conduct are deceptive. Fourth, the difficulties in managing this case likely are minimal. As explained below, each member of the class is ascertainable through records Midland and courts retain. After class members are identified and notice is sent, all that remains is to conduct further discovery to determine whether the single uniform representation that Midland made to the class members is deceptive and ascertain Midland's net worth to evaluate the amount of statutory damages available to Butela and the class members. Since common evidence can answer these questions, as explained above, this case is manageable. Superiority is satisfied.

### iii.    The Class Satisfies Ascertainability.

To establish ascertainability, a class must be "defined with reference to objective criteria" and there must be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition[.]" *Byrd*, 784 F.3d at 164-65. This does not

require identification of "all class members at class certification—instead, a plaintiff need only show that class members can be identified." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020).

The class is ascertainable here because it is defined with reference to objective criteria and there is a reliable and administratively feasible mechanism for establishing class membership. The objective criteria that determine class membership are: 1) whether Midland sent a consumer a letter in which Midland made a settlement offer, represented that the offer would expire, and claimed a judgment could be entered before the offer expired; and 2) whether the letter was sent at a time in which no dispositive hearing was scheduled to occur before the settlement offer listed in the letter could expire. Those who meet these objective criteria are ascertainable through Midland's records and public dockets. The date printed on a letter, the date a lawsuit is filed, a lawsuit's case number, and the date and outcome of a lawsuit are stored on one of Midland's internal systems called "Debt Manager." (Canez Dep. 32:17-34:15, 45:24-47:18, 55:5-56:15, 78:15-79:23, 95:18-97:15.) Hearing dates are "[p]otentially" stored on an internal system maintained by Midland's in-house attorneys, (*id.* at 95:18-97:15), but if they are not, hearing dates are publicly available via a website maintained by the Commonwealth: https://ujsportal.pacourts.us/CaseSearch. The date on a letter can be cross referenced with the date a lawsuit was filed to ascertain each person that received a letter before a lawsuit was filed (and therefore had no dispositive proceeding scheduled before a settlement offer could expire). The date on a letter also can be cross referenced with the outcome of a lawsuit and the date the lawsuit was resolved to ascertain each person that received a letter after a lawsuit was dismissed, withdrawn, or resolved in their favor (and therefore had no dispositive proceeding scheduled before a settlement offer could expire). And the date on a letter can be cross referenced with the date of a scheduled dispositive proceeding to ascertain each person

12

that received a letter with an offer expiration date that was thirty days before the scheduled hearing (and therefore had no dispositive proceeding scheduled before a settlement offer could expire). Each of the class members can be ascertained with reference to objective criteria.

To the extent Midland claims individual consumer files must be reviewed to ascertain the class, or that multiple sets of records must be reviewed to establish class membership, these are not reasons to deny class certification. *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) ("Plaintiff need not . . . demonstrate that a single record, or set of records, conclusively establishes class membership."); *Byrd*, 784 F.3d at 171 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012)) ("[T]he need to review individual files to identify [class] members [is] not [a] reason[] to deny class certification.").

This is especially true where, like here, any individualized review is "ministerial in nature" and "easy to resolve." *See, e.g., Avila v. Van Ru Credit Corp.*, No. 94-cv-03234, 1995 U.S. Dist. LEXIS 461, at *22 (N.D. Ill. Jan. 31, 1995) (analyzing ascertainability with predominance and certifying class where members could be ascertained by comparing letter identification codes with defendants' records); *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 120 (E.D.N.Y. 2015) (analyzing ascertainability with commonality and certifying class where members could be ascertained by reviewing letters and defendant's records, and determining whether person agreed to specific agreement); *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. 15-cv-01012, 2016 U.S. Dist. LEXIS 194091, at *8 (W.D. Wash. Nov. 22, 2016) (analyzing ascertainability with numerosity and certifying class where members could be ascertained by determining where lawsuit filed, where debtor resided, where contract signed, and whether judgment entered, and comparing place of lawsuit with debtor residence).

But even if the review at issue were more arduous and time consuming, it still would not preclude class certification because all that matters is whether "class members *can* be identified." *City Select*, 867 F.3d at 439 (quoting *Byrd*, 784 F.3d at 163) (emphasis in original). Take *Hargrove* as an example, a case in which the Third Circuit found a district court abused its discretion in denying class certification where the plaintiffs proposed ascertaining class members by reviewing affidavits and the defendant's records, including contracts, driver rosters, security gate logs, and pay statements, to determine the identity of full-time delivery truck drivers, the amount of and reason for pay deductions, the number of hours worked per week, and the amount of pay received. 974 F.3d at 479-81. Another example is provided by *City Select*, a case in which the Third Circuit also held a district court abused its discretion in denying class certification where the plaintiffs proposed reviewing a database of fax numbers and cross referencing the database with affidavits to ascertain which numbers received faxes on particular dates. 867 F.3d at 440-43.

Myriad other courts have certified classes whose members were just as difficult or more difficult to ascertain than the class at issue in this case. *See, e.g., In re Cmty. Bank*, 795 F.3d at 396-97 (affirming class certification where members could be ascertained by "consult[ing] [a bank]'s business records and then follow[ing] a few steps to determine whether [a] borrower [wa]s the real party in interest"); *McIntyre v. RealPage, Inc.*, 336 F.R.D. 422, 432-33 (E.D. Pa. 2020) (certifying class where members could be ascertained by comparing business records with publicly available court records); *Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 82-86 (E.D. Pa. 2018) (certifying class where members could be ascertained by comparing chart compiled by plaintiff, which identified vehicles with qualifying passive antitheft devices, with database maintained by defendant, which identified individuals with comprehensive loss coverage for such vehicles who did not receive passive antitheft device discount, even though "identifying class

14

members may be difficult and time consuming"); *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007) (certifying class where members could be ascertained by determining date of discharge of debt in bankruptcy and date of debt collection letter, and certifying subclass where members could be ascertained by determining whether debt collection was contested within certain time period and whether defendant made demand for proof of bankruptcy); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, No. 16-cv-00046 & No. 16-cv-00447, 2021 U.S. Dist. LEXIS 93752, at *35-44 (D.R.I. May 18, 2021) (certifying class where members could be ascertained through requests for production and subpoenas, and documents or datasets); *In re Celgene Corp. Sec. Litig.*, No. 18-cv-04772, 2020 U.S. Dist. LEXIS 230548, at *35-36 (D.N.J. Nov. 25, 2020) (certifying class where members could be ascertained by reviewing shareholder acquisition records to identify individuals and entities that acquired certain common stock during relevant time period); *Butterline v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 15-cv-01429, 2018 U.S. Dist. LEXIS 59433, at *24-28 (E.D. Pa. Apr. 6, 2018) (denying motion to strike class action allegations where members could be ascertained by reviewing sheriff's sale records to identify property sales in which bank was winning bidder, sale generated excess proceeds, and former property owner requested but did not receive excess funds); *Grubb v. Green Tree Servicing, LLC*, No. 13-cv-07421, 2017 U.S. Dist. LEXIS 117465, at *46-55 (D.N.J. July 26, 2017) (certifying class where members could be ascertained by reviewing defendant's business records to determine when defendant sent debt collection letter, where letter was sent, to whom debt was owed, whether debt was in default when transferred to defendant, and whether letter itemized amount of debt); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 691-93 (N.D. Ga. July 12, 2016) (certifying class where members could be ascertained by reviewing defendants' records, third parties' records, and class members' own records to determine identity of payer of

15

first bag checking fee, residence of payer of fee, date of payment of fee, and whether payment of fee was associated with domestic or international flight); *Perez v. First Am. Title Ins. Co.*, No. 08-cv-01184, 2009 U.S. Dist. LEXIS 75353, at *19-22 (D. Ariz. Aug. 12, 2009) (analyzing ascertainability with superiority, and certifying class where members could be ascertained by reviewing databases and other documents maintained by defendant to identify individuals who refinanced loan on residential property with defendant, had prior title insurance policy on same property within five years before refinancing residential loan, and were denied discounted mortgage refinance rate); *Sadler v. Midland Credit Mgmt., Inc.*, No. 06-cv-05045, 2009 U.S. Dist. LEXIS 26771, at *4-9 (N.D. Ill. Mar. 31, 2009) (certifying class where members could be ascertained by reviewing defendants' database to determine origin of debt, date of discharge, date of any partial payment, and date of correspondence).

In short, ascertainability is satisfied here because there is no need for the type of "extensive and individualized fact-finding or mini-trials" that preclude certification in other contexts. *Marcus*, 687 F.3d at 593. And, as one court put it, although class member identification "may involve a file-by-file review, it will not require a file-by-file trial." *Perez*, 2009 U.S. Dist. LEXIS 75353, at *21. Ascertainability is satisfied.

## V.    <u>CONCLUSION</u>

For all of the reasons explained herein, Butela respectfully requests that the Court certify the proposed class under Rule 23(a) and (b)(3), appoint Butela as representative of the proposed class, and appoint undersigned counsel as class counsel.

Respectfully submitted,

Dated: August 19, 2021                By:    _/s/ Kevin Abramowicz_____
                                             Kevin Abramowicz
                                             Kevin Tucker
                                             Chandler Steiger
                                             Stephanie Moore
                                             **East End Trial Group LLC**
                                             6901 Lynn Way, Suite 215
                                             Pittsburgh, PA 15208
                                             (412) 223-5740 – office
                                             (412) 626-7101 – fax
                                             kabramowicz@eastendtrialgroup.com
                                             ktucker@eastendtrialgroup.com
                                             csteiger@eastendtrialgroup.com
                                             smoore@eastendtrialgroup.com

                                             *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2021, a copy of the foregoing document was served on all counsel of record via CM/ECF.

                                             _/s/ Kevin Abramowicz_____
                                             Kevin Abramowicz