IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH BUTELA,

                    *Plaintiff,*

          v.

MIDLAND CREDIT MANAGEMENT INC.,

                    *Defendant.*

Civil Action No. 2:20-cv-1612

Hon. William S. Stickman IV

## OPINION

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Joseph Butela ("Butela") filed this putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, against Defendant Midland Credit Management, Inc. ("MCM") in the Court of Common Pleas of Allegheny County, Pennsylvania. In the single-count Complaint, Butela asserts, on behalf of himself and others similarly situated, that MCM violated the FDCPA by sending settlement offer letters that contained false, deceptive, or misleading representations in connection with the collection of debt, *see id.* § 1692e, and that used unfair or unconscionable means to collect debt, *see id.* § 1692f. (ECF No. 1-2, ¶¶ 38–41). MCM removed the case to this Court on the basis of federal-question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441. After the close of discovery, Butela filed a Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). (ECF No. 26). The Court will grant the motion for the reasons below.

## I. BACKGROUND

    Butela, a resident of Pennsylvania, opened a credit card account with Capital One Bank. (ECF No. 27-6, ¶¶ 4–5). He used that credit card primarily for personal (and not business)

purposes.  (*Id.* ¶ 6).  After Butela failed to make payments, Capital One Bank sold the defaulted account to MCM, a California corporation that at times purchases and collects debt.  (ECF No. 1-2, ¶¶ 6–7, 10; ECF No. 5, ¶¶ 6–7, 10).  On August 15, 2020, MCM sent Butela a settlement offer letter.  (ECF No. 27-6, p. 5).  That letter stated: "Congratulations!  You have been pre-approved for a discount program designed to save you money on your Legal Collections account without any further legal action.  We encourage you to take advantage of these generous options: pay TODAY at MidlandCredit.com or call (866) 300-8750 now."  (*Id.*).  The letter then listed two discounted payment options with due dates of "09/14/2020."  (*Id.*).  Finally, the letter stated, in relevant part:

> **A judgment could be awarded by the court before the expiration of the discount offer listed in this letter.**  A judgment may include costs and post-judgment interest which may increase the balance owed.  If you pay the discount offer in this letter by 09/14/2020, we will satisfy the judgment in full upon receipt of payment based on the balance stated in this letter.  Please contact us if you have any questions.

(*Id.*) (emphasis added).  At the time MCM sent this letter, it had not yet filed a debt collection lawsuit against Butela.  (ECF No. 1-2, ¶ 19; ECF No. 5, ¶ 19).  Rather, MCM only filed such a suit on September 14, 2020, in a Magisterial District Court in Allegheny County, Pennsylvania.  (ECF No. 27-1).

Butela filed the present lawsuit against MCM one day later, on September 15, 2020.  (ECF No. 1-2, p. 15).  He alleges that MCM's representation in the settlement offer letter that "[a] judgment could be awarded by the court before the expiration of the discount offer," (ECF No. 27-6, p. 5) [hereinafter "the judgment clause"], was "false, deceptive, or misleading" and "unfair or unconscionable," in violation of the FDCPA.  15 U.S.C. §§ 1692e, 1692f.

## II.   ANALYSIS

Butela now moves to certify a class action.  (ECF No. 26).  In support of this motion, he argues that all of the requirements of Rule 23(a) and 23(b)(3) have been satisfied.  (ECF No. 27, pp. 9–21).  In response, MCM disputes that Butela has satisfied Rule 23.  (ECF No. 28, pp. 11– 24).  MCM further argues that certification should be denied because Butela has not shown that each putative class member has Article III standing.  (ECF No. 28, pp. 24–25).  As explained below, the Court holds that Butela, the putative class representative, has standing to sue, which is sufficient at the class certification stage.  The Court further holds that the proposed class—as modified by the Court—satisfies the requirements of Rule 23.  The Court will, therefore, grant Butela's class certification motion.

### A.   Article III Standing

The Court begins, as it must, with "the threshold jurisdictional question": whether Butela and/or the putative class members have standing to sue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  Article III standing is conferred when a plaintiff has (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  Moreover, "each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*   At the class certification stage, the "standing inquiry focuses solely on the class representative(s)."  *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018); *see also Neale v. Volvo Cars of N. Am., LLC*,

794 F.3d 353, 362, 364 (3d Cir. 2015) ("[A] class action is permissible so long as at least one named plaintiff has standing.").

Here, MCM invoked federal jurisdiction by removing the case from state court. It is therefore MCM—and not Butela—that has the burden of establishing Article III standing. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam) ("As the party invoking federal jurisdiction, [the defendant] had to establish that all elements of jurisdiction—including Article III standing—existed at the time of removal."); *see also Johnson v. Patenaude & Felix, A.P.C.*, 2021 WL 3260064, at *3 (M.D. Pa. July 29, 2021). MCM has satisfied that burden by showing that Butela, the putative class representative, has standing. (ECF No. 32, p. 5). First, Butela has alleged that he suffered an injury in fact from MCM's materially false, misleading, and deceptive communication. (ECF No. 1-2, ¶¶ 17, 25–26). This informational injury, though intangible, satisfies the first requirement of Article III standing because it constitutes an invasion of a debtor's legally protected interest in truthful information under the FDCPA and is sufficiently actual, concrete, and particularized. *See, e.g.*, *Bordeaux v. LTD Fin. Servs., L.P.*, 2021 WL 4438127, at *4 (D.N.J. Sept. 28, 2021); *Johnson*, 2021 WL 3260064, at *4; *Balon v. Enhanced Recovery Co., Inc.*, 264 F. Supp. 3d 597, 608–10 (M.D. Pa. 2017); *Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 734–37 (D.N.J. 2017). Second, Butela's injury is fairly traceable to MCM's representation in the settlement offer letter. Third, and finally, his injury is likely to be redressed by a judicial decision awarding statutory damages. *See* 15 U.S.C. § 1692k(a)(2) (providing for statutory damages for violations of the FDCPA).

Notwithstanding Butela's standing to sue, MCM argues that certification should be denied because Butela has not shown that *each putative class member* has standing. (ECF No. 28, pp. 24–25). MCM cites to the Supreme Court's decision in *TransUnion LLC v. Ramirez*,

141 S. Ct. 2190 (2021), for the proposition that "all class members must have Article III standing for a class action to be proper." (ECF No. 28, p. 24). However, contrary to MCM's assertion that *TransUnion* "raised the bar" (ECF No. 32, p. 5), that case considered the question of Article III standing at a very different stage of the litigation—namely, after trial. *See TransUnion*, 141 S. Ct. at 2208. The Supreme Court thus held that "[e]very class member must have Article III standing in order to recover individual damages" and stated that evidence of such must be adduced at trial. *Id.* But the Supreme Court expressly declined to address "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 2208 n.4. As such, *TransUnion* did not abrogate the Court of Appeals for the Third Circuit's prior decisions in *Neale* and *Mielo*. Those cases, which are binding on this Court, provide that "unnamed, putative class members need not establish Article III standing" at the class certification stage. *Neale*, 794 F.3d at 362; *see also Mielo*, 897 F.3d at 478. Rather, at that early stage, the case-or-controversy requirement of Article III is satisfied "so long as a class representative has standing." *Neale*, 794 F.3d at 362. Accordingly, since Butela has standing, the Court need not consider the standing of each putative class member at this time.

**B. Rule 23 Analysis**

A class may be certified where the moving party satisfies the four requirements of Rule 23(a), and, depending on the avenue, the requirements of Rule 23(b)(1), (b)(2), or (b)(3). *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019). Under Rule 23(a):

> (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).

*Id.* at 182–83 (citation omitted).  If the moving party satisfies these requirements, the analysis turns to Rule 23(b).  *See id.* at 183.  Under Rule 23(b)(3)—the chosen avenue in this case—"the questions of law or fact common to class members [must] predominate over any questions affecting only individual members" (predominance), and "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3).  Finally, as an implicit requirement of Rule 23(b)(3), "the class must be currently and readily ascertainable based on objective criteria" (ascertainability).  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012); *see also Shelton v. Bledsoe*, 775 F.3d 554, 560 (3d Cir. 2015).

A court can certify a class action only if, after conducting "a rigorous analysis," it is satisfied that the requirements of Rule 23 have been met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Rule 23 is no "mere pleading standard."  *Id.* at 350.  Rather, it requires that "factual determinations be made by a preponderance of the evidence."  *Ferreras*, 946 F.3d at 183.  In other words, a court "must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).  A trial court "possesses broad discretion to control proceedings and frame issues for consideration under Rule 23."  *Id.* at 310.  Nevertheless, "[p]rior to certifying a class, a district court must resolve every dispute that is relevant to class certification."  *Ferreras*, 946 F.3d at 183.

### 1.  Class Definition and Class Claims

As an initial matter, the Court must "define the class and the class claims, issues, or defenses."  Fed. R. Civ. P. 23(c)(1)(B).  More specifically, the Court must set forth "(1) a readily

6

discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187–88 (3d Cir. 2006); *see also Mielo*, 897 F.3d at 488 n.21; *Neale*, 794 F.3d at 369.

### a. Class Definition

Throughout this litigation, Butela has proposed several class definitions. In the Complaint and his brief in support of certification, Butela initially proposed the following class:

> All individuals who, within the applicable statute of limitations, received a letter from Defendant that made one or more settlement offer(s), listed an expiration date for the offer(s), and stated a judgment could be awarded before the expiration date of the listed offer(s), despite the fact that there was no dispositive proceeding scheduled in any lawsuit filed against the recipient of the letter before the expiration date of the listed offer(s).

(ECF No. 1-2, ¶ 29; ECF No. 27, p. 9) [hereinafter "original class definition"]. MCM challenged certification of that class in its brief in opposition, arguing, *inter alia*, that Butela himself did not fall within the defined class. (ECF No. 28, p. 22). According to MCM, "membership in [this] class turns on the absence of a 'scheduled dispositive proceeding' in a 'lawsuit filed.'" (*Id.* at 23). But "no lawsuit had been filed against [Butela]," meaning that "he is not a member of his own class." (*Id.* at 8, 23). MCM further argued that the question whether a proceeding was "dispositive" is inherently subjective, requiring "a case-by-case examination to determine whether any given [individual] is a member of [the] putative class." (*Id.* at 17).

Butela responded to these objections in his subsequent reply brief by offering an amended class definition:

> All individuals who, within the applicable statute of limitations: i) received a letter from Defendant that made one or more settlement offer(s), listed an expiration date for the offer(s), and stated a judgment could be awarded before the expiration date of the listed offer(s); and ii) at the time the letter was sent, did not have a lawsuit pending against them in any Court of Common Pleas, and did not

7

have a hearing scheduled to occur in any Magisterial District Court before the
settlement offer(s) listed in their letter was set to expire.

(ECF No. 29, p. 6) [hereinafter "first amended class definition"].  Butela thus endeavored to

correct the alleged failings of the original class definition by carving out certain individuals who

had lawsuits filed against them and by removing any reference to a "dispositive" proceeding.

Despite these changes, MCM maintained its opposition to class certification, contending in its

sur-reply brief that the "new class definition suffers from the same defects that make class

certification impossible."  (ECF No. 32, p. 1).  Specifically, MCM argued that "the revised

definition neither eliminates the necessity of individualized inquiries . . . nor reveals any

administratively feasible way to determine its membership without resorting to . . . 'mini-trials.'"

(*Id.* at 2).

The Court then heard oral argument via videoconference.  (ECF No. 35).  During

questioning, the Court inquired into certain ambiguities and seeming inconsistencies in the first

amended class definition.  First, the Court questioned the parties about the geographic scope of

the class.[1]  Counsel for Butela clarified that "all of the limiting factors" in the definition were

"intended to be within the Commonwealth [of Pennsylvania]."  (ECF No. 36, p. 13).  Thus, the

opening phrase "[a]ll individuals" refers to "all Pennsylvania residents."  (*Id.*).  And the later

references to "any Court of Common Pleas" and "any Magisterial District Court" concern only

"Pennsylvania courts."  (*Id.*).  MCM's counsel, for her part, confirmed that MCM—a California-

---

[1]      THE COURT: . . . [M]y next question goes to the scope of your definition.
When you say all individuals, do you mean all Pennsylvania residents or all
individuals in the country?  Because the reason I ask that is this:

The later language in this definition focuses specifically on what appears
to be Courts of Common Pleas and Magisterial District Courts.  I guess my first
question would be are you referring to in the Commonwealth of Pennsylvania or
the trial level courts and small claims courts anywhere in the country?  That was
not necessarily clear here.

(ECF No. 36, p. 12).

based company—"files lawsuits against individuals in every state of the union." (*Id.* at 35). MCM generally commences its debt collection suits against consumers in the state "where they live," (*id.*), as is required by the FDCPA. *See* 15 U.S.C. § 1692i(a)(2)(B). Nevertheless, counsel for MCM further stated that "consumers are sued *where we believe they live*" and acknowledged that there have been prior cases where MCM sued a consumer in one state only to later discover that the consumer had moved to a different state. (ECF No. 36, pp. 34–35) (emphasis added). A situation could therefore arise where MCM files suit, albeit mistakenly, against a Pennsylvania resident in some other state besides Pennsylvania.

Aside from these questions regarding the geographic scope of the first amended class definition, the Court also asked counsel about an apparent inconsistency in the definition with respect to timing—namely, whether the critical point in time under the FDCPA is when the letter was "received" or when the letter was "sent."[2] Counsel for Butela responded that both timeframes were intentionally used in the definition, contending that the "received" language was "intend[ed] to . . . key in on the universe of people . . . who received the letter," and the "sent" language was "how you determine if someone has a claim." (*Id.* at 11). In other words, according to Butela, an FDCPA claim accrues at the time the letter is sent. MCM's counsel

---

[2]     THE COURT: . . . [T]here seems to be an internal inconsistency noted in the terms of timing in the definition. And [s]ubpart [1] focuses on when the debtor receives the letter, it's, quote, receiving a letter, unquote. And subpart 2 focuses on when the debt collector sends the letter. It refers to at the time the letter was sent.

    And I guess my first question is what are you actually using there? What is the timeframe that you're looking at? From the date the letter is sent or the date it's received?

    And this is one of the legal questions I have here. As a matter of law, does the Fair Debt Collection Practices Act claim accrue at the time of the sending or the time of the receipt?

(ECF No. 36, pp. 10–11).

countered this assertion, arguing that an FDCPA claim accrues "when the letter [is] received, and it cannot accrue on any other date because . . . what's true when the letter is printed and mailed may not be true on the day that the letter is received." (*Id.* at 34). Counsel for MCM stated that "if the consumer doesn't receive this letter at all, then there is no threat." (*Id.* at 31–32).

Finally, the Court questioned the parties during oral argument about the distinction made in the latter part of the first amended class definition between "a *lawsuit* pending . . . in any Court of Common Pleas" and "a *hearing* scheduled to occur in any Magisterial District Court."[3] The Court posited that this was "a distinction . . . without a difference" that may overly complicate the process of identifying class members. (*Id.* at 6). Accordingly, the Court asked both parties whether the definition could instead focus solely on lawsuits—*e.g.*, "at the time the letter was sent, there was no lawsuit pending in any court of the Commonwealth of Pennsylvania." (*Id.* at 7–8, 26–27). Butela's counsel confirmed that such a class could be identified. (*Id.* at 8). MCM's counsel, however, contended that this class would "still have the same issues" as the prior proposed classes. (*Id.* at 27).

Following oral argument, the Court permitted the parties to file supplemental briefing. In his supplemental brief, Butela maintained that certification of the first amended class definition would be proper. (ECF No. 40, p. 3). But he also took the Court's suggestion and offered a second amended class definition, which he refers to as a "no lawsuit" class:

---

[3]       THE COURT: . . . [I]n subpart 2 of the definition that I just read to you, your amended definition, you state that the class is comprised of those who received the letter but did not have a, quote, lawsuit pending against them in any Court of Common Pleas, and the next clause says did not have a hearing scheduled to occur in any Magisterial District Court.

      Why is it [not] just a lawsuit in one or the other? Why is it a lawsuit pending in a CCP versus a hearing scheduled at an MDJ?

(ECF No. 36, pp. 6–7).

> All individuals who: i) received a letter from Defendant that made one or more settlement offer(s), listed an expiration date for the offer(s), and stated a judgment could be awarded before the expiration date of the listed offer(s); and ii) at the time the letter was sent, had not yet been sued for the debt identified in the letter.

(ECF No. 40, p. 4 n.4) [hereinafter "second amended class definition"].  Though MCM filed its supplemental brief prior to Butela's, MCM had notice of this type of amendment to the class definition due to the Court's repeated questioning during oral argument.  MCM thus had the opportunity to respond, both during oral argument and in its supplemental brief.

After careful consideration, the Court declines to adopt verbatim any of the above-described class definitions.  Formulating a "workable class definition" generally requires "ongoing refinement and give-and-take."  *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).  District courts are not bound by the class definition proposed by a plaintiff.  *See, e.g.*, *Chedwich v. Univ. Pittsburgh Med. Ctr.*, 263 F.R.D. 269, 272 (W.D. Pa. 2009).  Rather, courts have "the authority to limit or modify class definitions in order to provide the precision needed for class certification."  *Id.*; *see also Shelton*, 775 F.3d at 564 ("Courts have discretionary authority to 'reshape the boundaries and composition of the class,'" so long as doing so "will better serve the purposes of Rule 23 and the underlying policies of the substantive law than would denying certification altogether." (citation omitted)); *Marcus*, 687 F.3d at 594 (stating that the district court on remand may "adjust[] the class definition as needed"); *In re Chiang*, 385 F.3d 256, 268, 271–72 (3d Cir. 2004) ("modify[ing] the class definition" on appeal to clarify an ambiguity and remove a subjective criterion).

The Court will, therefore, adopt the following modified class definition, which has been slightly altered from the second amended class definition:

> All Pennsylvania residents who: (i) on or after September 15, 2019, were sent a letter by Midland Credit Management, Inc. that made one or more settlement offer(s), listed an expiration date for the offer(s), and stated a judgment could be awarded before the expiration date of the listed offer(s); and (ii) at the time the

letter was sent, had not yet been sued in any court in the United States for the debt identified in the letter.

The Court makes these modifications for several reasons. First, in the interest of clarity, the modified definition includes "[a]ll Pennsylvania residents" rather than broadly including "[a]ll individuals." This change comports with the parties' understanding of the geographic scope of the class. Second, the modified definition in subpart (i) delineates the class period[4] and makes clear that the letter must have been sent—not received—during that period. The Court makes this change after considerable deliberation as to when an FDCPA claim accrues. As explained below (*see infra* II.B.8.a), the Court holds that an FDCPA claim premised on a letter with allegedly false, deceptive, or misleading language or unfair or unconscionable language arises at the time the letter is sent, not the time the letter is received. Third, and finally, the modified definition in subpart (ii) acknowledges the geographic reach of MCM's lawsuits by adding the phrase "in any court in the United States." In doing so, the modified definition cures a potential overbroadness problem that may have precluded certification of the first amended class definition.[5] *See Mielo*, 897 F.3d at 490 n.22 ("[M]ere promises to interpret a class definition in a limited fashion will not save an otherwise overly-broad class definition from failing to satisfy

---

[4] The FDCPA provides that an action "may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Since Butela filed the instant lawsuit on September 15, 2020, the putative class cannot include individuals whose claims arose more than one year prior to that date. In other words, in accordance with the FDCPA's one-year statute of limitations, the class must be limited to those persons with claims accruing on or after September 15, 2019.

[5] The first amended class definition included Pennsylvania residents who had no pending litigation against them *in Pennsylvania*, but it failed to exclude Pennsylvania residents who may have had a lawsuit pending against them *in any other state*. Though the latter situation might be rare—due to mistaken filings by MCM—it nonetheless reveals a dissimilarity among class members that may have been fatal to Butela's ability to satisfy the typicality requirement of Rule 23(a)(3).

Rule 23.  If a class is defined too broadly, the time to correct the flaw is at the time of certification, or soon thereafter.").

The Court finds that these modifications are in keeping with the clarifications offered by the parties during oral argument.  The Court further finds that the modified class definition "will better serve the purposes of Rule 23 and the underlying policies of the substantive law than would denying certification altogether." *Shelton*, 775 F.3d at 564 (citation omitted).

### b.  Class Claims

The Court next considers "the precise claims subject to class treatment." *Neale*, 794 F.3d at 370.  Though the Complaint is styled as a single count, Butela really asserts two claims under the FDCPA.  (ECF No. 1-2, ¶¶ 38–41).  First, he alleges that the disputed language in MCM's settlement offer letter constituted a "false, deceptive, or misleading representation . . . in connection with the collection of any debt." 15 U.S.C. § 1692e.  Second, he asserts that, through such language, MCM "use[d] unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.  For those alleged violations, Butela seeks statutory damages[6] and attorneys' fees and costs.  *Id.* § 1692k(a)(2), (3).  Both FDCPA claims, as well as the issue of statutory damages, are to be treated on a class basis.  (ECF No. 1-2, ¶ 38).

Having defined the class and the class claims, the Court now turns to the myriad requirements of Rule 23(a) and 23(b)(3).  As demonstrated below, the modified class definition satisfies each of these requirements.

### 2.  Numerosity

The numerosity requirement of Rule 23(a)(1) requires proof that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "There is no

---

[6] Though the Complaint requested actual damages in addition to statutory damages, Butela has since abandoned the former request. (*Compare* ECF No. 1-2, ¶ 41, *with* ECF No. 27-5, p. 5).

minimum number of members needed for a suit to proceed as a class action." *Marcus*, 687 F.3d at 595. Nevertheless, "a plaintiff . . . can generally satisfy [the] numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo*, 897 F.3d at 486 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001))). In making such a showing, a plaintiff need not "offer direct evidence of the exact number and identities of the class members." *Marcus*, 687 F.3d at 596. Instead, a plaintiff may present "circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition." *Id.*

Here, Butela attempted to identify putative class members during discovery. He first requested that MCM produce "[a]ll Letters [containing the judgment clause] mailed or caused to be mailed to Consumers who had a Pennsylvania address displayed on the Letters." (ECF No. 29-1, p. 11). According to Butela, MCM failed to fully respond to that request. (*Id.* at 20; ECF No. 29-2, p. 3). The parties met and conferred twice, but those meetings failed to resolve the dispute. (ECF No. 29-2, p. 3). Butela then served, in lieu of the request for production, a second set of interrogatories requesting "information from September 15, 2019 to present" regarding "Letters mailed or caused to be mailed to individuals who had a Pennsylvania address displayed on the Letter." (*Id.* at 4). Specifically, Butela asked that MCM "[i]dentify the number of Letters [it] sent" as well as "the first and last name of the consumer, the address, city, state, and zip code of the consumer, the date of the letter, the expiration date of the settlement offer, and the creditor for the underlying debt." (*Id.*). MCM objected to these interrogatories as "overly broad" and responded as follows. (*Id.* at 7–8). First, MCM admitted that "between September 1, 2019 and September 1, 2020"—a shorter period than requested by Butela—"MCM sent 69,239 letters." (*Id.* at 7). Second, MCM provided a spreadsheet listing "the city, state and

zip code of each address to which letters were sent, together with the dates of each letter," but not listing any particular names or addresses because "[n]ot every letter recipient is a member of Plaintiff's putative class" and those individuals "may not want their personal identifying information disclosed to Plaintiff's counsel." (*Id.* at 8). Finding these responses to be deficient, Butela served a third set of interrogatories and requested that MCM "identify each letter that was sent at the time a lawsuit was pending against the recipient of the letter for the debt identified in the letter." (ECF No. 29-3, p. 4). MCM again objected, asserting that Butela's request was "unduly burdensome" and would require an "incredibly time consuming" "file-by-file" review. (*Id.* at 8).

The parties subsequently presented this discovery dispute to the Court during a telephonic status conference. (ECF No. 21). The Court directed counsel "to confer with their clients to determine if a stipulation as to numerosity would moot the dispute" or, alternatively, to file a motion for protective order or a motion to compel. (*Id.*). Thereafter, the Court received notice that "Defendant stipulates to numerosity," which, according to the parties, "resolved their discovery dispute." (ECF No. 23).

Based on this stipulation, the Court finds that the numerosity requirement has been satisfied. Though Butela has not presented evidence of the exact number of class members, the above-described discovery dispute reveals that Butela *cannot* present such evidence. Rather, that information remains in the sole control of MCM. At this stage, MCM has revealed only that it sent 69,239 letters with the judgment clause to Pennsylvania residents between September 1, 2019, and September 1, 2020. That information, by itself, is insufficient for purposes of certification. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) ("[G]enerally, where a putative class is some subset of a larger pool, the trial court may not infer

numerosity from the number in the larger pool alone."). In terms of class membership, the number provided by MCM is both over and under-inclusive. It is overinclusive to the extent that it includes every letter recipient regardless of whether they had a lawsuit filed against them. And it is underinclusive in that it captures only a portion of the applicable class period. Nevertheless, MCM has "stipulate[d] to numerosity," (ECF No. 23), meaning that upon review of its own records, it admits that "the potential number of plaintiffs exceeds 40." *Mielo*, 897 F.3d at 486 (citation omitted). The Court accepts this factual stipulation—due to the unique circumstances of this case—and finds that the modified class definition satisfies Rule 23(a)(1)'s numerosity requirement. *See United States v. Reading Co.*, 289 F.2d 7, 9 (3d Cir. 1961) ("A stipulation, being a formal agreement conceding or admitting matters incident to judicial proceedings, is to be encouraged as a means of simplifying issues and avoiding unnecessary proof." (citation omitted)).

### 3. Commonality

Rule 23(a)(2) requires a plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule "is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349 (cleaned up). "What matters to class certification is not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (cleaned up). In other words, to satisfy the commonality requirement, the claims "must depend upon a common contention," and that contention must be "capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "For purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 359 (cleaned

up); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) ("A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." (citation omitted)).

To state a claim under the FDCPA, a plaintiff must prove that (1) the plaintiff is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged conduct involves an attempt to collect a debt, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (citation omitted). "[A]ny lender-debtor communications potentially giving rise to claims under the FDCPA . . . [must] be analyzed from the perspective of the least sophisticated debtor." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006). This is an objective standard, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Moyer*, 991 F.3d at 470 (citation omitted). The least sophisticated debtor standard "protects naive consumers," but "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Brown*, 464 F.3d at 454 (citation omitted); *see also Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008) ("Even the least sophisticated debtor is bound to read collection notices in their entirety.").

The Court finds that Butela has met his burden with respect to commonality. As Butela correctly points out, "all elements of the FDCPA claim, as well as the availability of statutory damages, are common to Butela and the class members." (ECF No. 27, p. 13). The first and second elements involve common statutory questions—*i.e.*, whether each class member is a "consumer" and whether MCM is a "debt collector," as those terms are defined under the

FDCPA.  *See* 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt"); *id* § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes"); *id.* § 1692a(6) (defining "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another").  These questions, moreover, are likely to generate common answers with respect to all class members. MCM has admitted that it is in the business of "purchas[ing] and servic[ing] . . . charged-off accounts"[7] and that "all of those accounts [are] consumer-related."  (ECF No. 27-3, pp. 8, 29). MCM has also gone so far as to admit that "at times it is a 'debt collector' as that term is defined by [the FDCPA]."  (ECF No. 27-4, p. 12).  Thus, without ruling on the merits, the Court finds that the first and second elements of the FDCPA claims in this case are common to the class.[8]

The remaining two elements likewise involve common questions and answers.  The third element—*i.e.*, whether MCM attempted to collect a debt—concerns uniform conduct by MCM

---

[7] To charge off a debt means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely."  *Charge off*, Black's Law Dictionary (11th ed. 2019); *see also Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 181 n.3 (D.N.J. 2012) (defining "charged off" to mean that the creditor "ceased its own efforts to bring the account current, closed the account, and referred it for collection").

[8] In certain FDCPA cases, it might be that the first element is not common to the entire class— that is, some plaintiffs may be consumers while others are not.  Not so here.  The record indicates that MCM purchases only *consumer-related* accounts, suggesting that all class members are consumers.  Nevertheless, should further development of the record reveal that the first element is really an individual issue, the Court would still find that Butela has satisfied the commonality requirement through the other common issues described above.  *See Wal-Mart*, 564 U.S. at 359 ("For purposes of Rule 23(a)(2), even a single common question will do." (cleaned up)).

with respect to every class member.  MCM purchased each plaintiff's account and, at some point thereafter, sent each plaintiff a settlement offer letter containing the judgment clause.  The question whether such conduct involved an attempt to collect a debt can be answered in one stroke.  So too can the question whether MCM violated the FDCPA by sending these letters—the fourth element and, according to Butela, the "fundamental question" in this case.  (ECF No. 27, p. 6).  The Court must determine, as a matter of law, whether MCM's representation in the settlement offer letter that "[a] judgment could be awarded by the court before the expiration of the discount offer," (ECF No. 27-6, p. 5)—even though no lawsuit had been filed against the recipient at the time the letter was sent—was "false, deceptive, or misleading" and "unfair or unconscionable," 15 U.S.C. §§ 1692e, 1692f, when viewed from the perspective of the least sophisticated debtor.  *See Moyer*, 991 F.3d at 468 ("Whether [a] collection letter violates the FDCPA is a question of law."); *Balon*, 264 F. Supp. 3d at 616 ("[A] determination concerning whether a communication subject to the FDCPA is 'false, deceptive, or misleading' from the perspective of the 'least sophisticated consumer' is a question of law."); *see also Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011) (per curiam) (applying the least sophisticated debtor standard to claims brought under both § 1692e and § 1692f).  All of the class members' FDCPA claims will rise or fall together upon resolution of that objective question of law.[9]  The Court, therefore, finds that the third and fourth elements are common to the class.

---

[9] MCM challenges this conclusion, arguing that "[t]here is no common answer to this question" because "[w]hether the entry of judgment was in fact 'possible' demands examination of each and every lawsuit, from beginning to end."  (ECF No. 28, pp. 20–21) (emphasis removed).  That argument, however, ignores the objective nature of the inquiry.  *See Moyer*, 991 F.3d at 470 ("[T]he specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." (citation omitted)).

Finally, the issue of statutory damages is common. The FDCPA provides that a court may award statutory damages to successful plaintiffs. *See* 15 U.S.C. § 1692k(a)(2). In the class action context, each named plaintiff may be awarded an amount "not exceeding $1,000," and the class may be awarded an amount "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." *Id.* The statute sets forth several factors that courts must consider when "determining the amount of liability," including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." *Id.* § 1692k(b)(2). Consideration of these factors will yield a common answer to the question of statutory damages for the class (*i.e.*, whether such damages should be awarded and in what amount).

The Court finds that Rule 23(a)(2)'s commonality requirement has been satisfied, as this case raises numerous questions of law and fact that are common to the class.

### 4. Typicality

The typicality requirement of Rule 23(a)(3) requires proof that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This rule "ensur[es] that the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). To assess typicality, "courts must consider the attributes of the proposed representatives, the class as a whole, and the similarity between the proposed representatives and the class." *Id.* That inquiry encompasses three distinct factors. First, "the claims of the class representative must be

generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory." *Id.* at 599.  Second, "the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *Id.*  Third, and finally, "the interests and incentives of the representative must be sufficiently aligned with those of the class." *Id.*

The Court finds that Butela has satisfied the typicality requirement.  The first and third factors are easily met.  As to the first, Butela's FDCPA claims are sufficiently similar—if not identical—to those of the class.  Butela advances the same legal theory as the class members, alleging that MCM violated two provisions of the FDCPA.  *See* 15 U.S.C. §§ 1692e, 1692f. Moreover, Butela and the unnamed plaintiffs share the same underlying factual circumstances: they were each sent a letter by MCM with the judgment clause, and, at the time the letter was sent, they had not yet been sued for the debt identified in the letter.  As to the third factor, Butela's interests in pursuing these claims are sufficiently aligned with the interests of the class. Based on the factual and legal similarities between their claims, as well as the fact that only statutory (and not actual) damages are at issue, Butela and the other plaintiffs share an equal stake in the outcome of the litigation.

The second typicality factor requires more discussion, but it, too, is satisfied.  MCM has raised the bona fide error defense against Butela.  (ECF No. 5, p. 5; ECF No. 36, p. 32).  This defense stems from a provision of the FDCPA that insulates a debt collector from liability so long as "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 576 (2010). Only "clerical or factual mistakes" constitute bona fide errors, not "mistakes of law."  *Daubert v.*

*NRA Grp., LLC*, 861 F.3d 382, 394 (3d Cir. 2017) (quoting *Jerman*, 559 U.S. at 587).   Here, MCM contends that "[t]he letter was transmitted as a result of an earlier clerical error that mistakenly indicated suit had been filed against Plaintiff."   (ECF No. 27-4, p. 3).   MCM explained that it utilizes a "system of records" called "Debt Manager" that automatically generates letters from various templates to send to consumers "based on the current account status."   (ECF No. 27-3, pp. 4, 6, 8).   A letter containing the judgment clause—the language at issue in this case—is triggered when an account contains an "active litigation" tag (meaning MCM "had filed suit" against the consumer) but not a "judgment" tag (meaning no judgment had yet been awarded by a court).   (*Id.* at 17–19).   In Butela's case, the letter was generated because his account was "inadvertently marked" with the "active litigation" tag despite no lawsuit having been filed against him.   (*Id.* at 18).

Based on this clerical error and the alleged "susceptibility of [Butela's] claims to the bona fide error defense," MCM contends that "class certification is improper."   (ECF No. 39, pp. 7–8). "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial."   *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006). The Court finds that MCM has not made this showing, as the bona fide error defense is not "unique" to Butela.   MCM contends that Butela's "account is unique in that a particular flag was placed on his account in error and that error may not be widely applicable to the entire proposed class."   (ECF No. 39, p. 8).   But that argument stands contrary to the testimony offered by MCM's own representative—that the Debt Manager system automatically generates letters from templates; that the letters are triggered by an account's current status (which is denoted with tags); and that the judgment clause letters at issue in this case are only created if an account is marked with an "active litigation" tag, but not a "judgment" tag.   It follows that, for each class

member to have been sent a letter containing the judgment clause, they must have had an account tagged with "active litigation."  But to be a class member in the first place, they must not yet have been sued at the time the letter was sent.  MCM thus made the same error with respect to each and every class member—*i.e.*, mistakenly placing the "active litigation" tag on their accounts.  MCM has not presented any evidence to dispute that straightforward conclusion, alleging only that "other factual circumstances exist that may set [Butela] apart from his proposed class."  (ECF No. 39, p. 8).  Such a vague assertion is not enough to show "some degree of likelihood" that the bona fide error defense will be unique to Butela. *Beck*, 457 F.3d at 300.  Therefore, it cannot be said that Butela is "subject to a defense that is . . . inapplicable to many members of the class." *In re Schering Plough*, 589 F.3d at 597.  The second typicality factor is met.[10]

Since the modified class definition satisfies each of the three typicality factors, the Court finds that Butela has met his burden under Rule 23(a)(3).

### 5. Adequacy

The adequacy requirement of Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ.

---

[10] The Court also doubts that the bona fide error defense is "likely to become a major focus of the litigation." *In re Schering Plough*, 589 F.3d at 597.  MCM has neither explained how it satisfies the final element of the bona fide error defense—*i.e.*, the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c)—nor has it produced any evidence to prove that element.  And the evidence of record thus far actually tends to *disprove* that MCM had any such procedures.  (*See* ECF No. 27-3, p. 19) (MCM's representative testifying that Debt Manager checks only the tags before generating the judgment clause letters and "doesn't have the ability" to "go in and review the actual filed lawsuit"); (ECF No. 27-4, p. 7) (MCM admitting that it "has no 'procedures for determining that a judgment may be awarded against individuals to which [MCM] mailed or caused to be mailed Letters.'").  At this stage, then, the bona fide error defense is merely "speculative," which is not enough to "disqualify the representative." *Beck*, 457 F.3d at 301; *see id.* at 300 ("If a court determines an asserted unique defense has no merit, the defense will not preclude class certification.").

P. 23(a)(4).  This rule "aims to root out conflicts of interest within the class to ensure that all class members are fairly represented."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (stating that Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent").  It also "tests the qualifications of class counsel and the class representatives."  *In re NFL Players*, 821 F.3d at 428.  A named plaintiff must "represent a class capably and diligently," *id.* at 430, and must "have a minimal degree of knowledge about the case," *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (cleaned up).  Moreover, class counsel must be sufficiently "experienced and qualified to prosecute the claims on behalf of the entire class."  *Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994).  In making that determination, a court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

The Court finds that Butela is an adequate class representative and that the attorneys of East End Trial Group LLC ("East End Trial Group") will serve as adequate class counsel.  There has been no allegation of any conflict of interest between Butela and the other plaintiffs, aside from MCM's argument that Butela is subject to a unique defense.  *See Beck*, 457 F.3d at 296 (explaining that "unique defenses bear on both the typicality and adequacy of a class representative").  But just as the bona fide error defense does not render Butela atypical (*see supra* II.B.4), it does not render him inadequate.  Since the defense is equally applicable to Butela and the class members, he will share the same interest as the class in raising a rebuttal,

should MCM continue to assert the defense. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) ("[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.").

In addition, there has been no allegation that Butela and his attorneys are not qualified to represent the class. Butela has affirmed that he understands and is willing to perform his duties as a class representative. (ECF No. 27-6, ¶¶ 16–21). He has also actively participated in the litigation, which has included, *inter alia*, providing facts to assist with drafting the Complaint and the Motion for Class Certification, sitting for a deposition, and taking part in mediation. (ECF No. 27-7, ¶¶ 5, 10). Butela's counsel, for their part, are sufficiently qualified to serve as class counsel. The attorneys of East End Trial Group have litigated more than one hundred FDCPA cases and are currently litigating approximately fifteen putative FDCPA class actions in federal district courts in Pennsylvania. (*Id.* ¶ 11). East End Trial Group has the requisite knowledge of this area of law, which has been reflected in the filings made to date. Moreover, East End Trial Group has performed all of the work necessary to litigate this case, and lead counsel Kevin Abramowicz has affirmed that the firm has the resources needed to pursue the claims to final judgment. (*Id.* ¶¶ 14–15).

The Court finds that the adequacy requirement has been satisfied and will appoint Joseph Butela as class representative and East End Trial Group as class counsel.

### 6. Predominance

Under Rule 23(b)(3), a plaintiff must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement is related to, but "far more demanding" than, the commonality requirement. *Amchem*, 521 U.S. at 623–24; *see also Reinig v. RBS Citizens,*

25

*N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) ("Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement."). Once commonality has been satisfied, predominance asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). To satisfy the predominance requirement, the moving party must show that the "essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Taha v. County of Bucks*, 862 F.3d 292, 308 (3d Cir. 2017) (citation omitted); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). But "[i]f proof of the essential elements . . . requires individual treatment, then class certification is unsuitable." *Reinig*, 912 F.3d at 128 (citation omitted).

The predominance requirement has been met here. The Court has already carefully assessed "the elements of the plaintiffs' underlying claims," *id.*, and determined that each element of the FDCPA claims, as well as the issue of statutory damages, is common to the class. (*See supra* II.B.3). Butela can attempt to prove through common evidence that (1) each plaintiff is a consumer, (2) MCM is a debt collector, (3) MCM's conduct in sending every settlement offer letter involved an attempt to collect a debt, and (4) MCM violated the FDCPA by making a representation that was "false, deceptive, or misleading" and "unfair or unconscionable," 15 U.S.C. §§ 1692e, 1692f, when viewed from the perspective of the least sophisticated debtor. If successful, Butela can rely on common evidence to seek statutory damages for the entire class. Since these are all common questions that can be addressed with common proof, none will

require individual treatment.[11]   The Court necessarily finds, then, that common issues predominate in this case.

### 7. Superiority

Rule 23(b)(3) next requires a determination that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   "The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."   *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., PNC Bank NA*, 795 F.3d 380, 409 (3d Cir. 2015) (citation omitted).   A court may consider the following factors: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Court finds that a class action is the superior method of adjudicating this case.   First, the class members do not have a significant interest in individually controlling the litigation. Due to the factual and legal similarity between each plaintiff's claims, any individual lawsuit

---

[11] The Court finds that even the first FDCPA element—whether each plaintiff is a consumer—is capable of common proof because, as previously mentioned, the record indicates that MCM purchases only consumer-related accounts.   The Court further finds that, should the first element ultimately require individualized inquiries, such inquiries would not predominate over the other common issues in this case.   *See Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998) ("The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.   If that need alone precluded certification, there would be no class actions under the FDCPA."); *see also, e.g., Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 383 (D. Utah 2020); *Rhodes v. Enhanced Recovery Co., LLC*, 328 F.R.D. 225, 230 (S.D. Ind. 2018); *Gradisher v. Check Enf't Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001); *Talbott v. GC Servs., Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000).

would likely proceed in the same fashion as a class action. Moreover, in light of the FDCPA's cap on statutory damages for successful individual plaintiffs, the class members would likely lack incentive to pursue their claims individually. *See* 15 U.S.C. § 1692k(a)(2)(A) (capping individual statutory damages at $1,000); *see also Reyes*, 802 F.3d at 491 ("A class action permits the plaintiffs to pool claims which would be uneconomical to litigate individually. Most of such plaintiffs would have no realistic day in court if a class action were not available." (cleaned up)); *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004) ("Representative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action."). Second, the Court is not aware of, nor have the parties referenced, any similar pending litigation against MCM. Third, it is desirable to concentrate litigation of the claims in a single action, as it will permit the Court to resolve the core (and common) question of FDCPA liability in one stroke. In addition, the Western District of Pennsylvania is a suitable forum for this class action since it concerns representations made to Pennsylvania residents. Fourth, and finally, the Court does not anticipate any difficulties in managing a class action. The common issues in this case—many, if not all, are issues of law— are well suited to aggregate litigation. *See Reyes*, 802 F.3d at 491 ("[C]onsumer class actions . . . provid[e] an indispensable mechanism for aggregating claims when the individual stake is low and the similarity of the challenged conduct is high." (citation omitted)). The superiority requirement is satisfied.

### 8. Ascertainability

Rule 23(b)(3) has a final implicit requirement: "[T]he class must be currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593; *see also Shelton*, 775 F.3d

at 562 ("The ascertainability requirement ensures that the procedural safeguards necessary for litigation as a (b)(3) class are met . . . ."). To satisfy the ascertainability requirement, a plaintiff must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (cleaned up). This "inquiry is narrow." *Id.* at 165. A plaintiff need not "be able to identify all class members at class certification"; rather, "a plaintiff need only show that 'class members *can* be identified.'" *Id.* at 163 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)). "A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership." *Carrera*, 727 F.3d at 307.

The Court finds that the modified class definition satisfies the ascertainability requirement. First, the definition utilizes objective, rather than subjective, criteria. Class membership is limited to (1) Pennsylvania residents (2) who were sent a letter by MCM making a settlement offer, listing an expiration date for that offer, and stating that a judgment could be awarded before the expiration date, (3) who were sent the letter on or after September 15, 2019, and (4) who had not yet been sued for the debt identified in the letter at the time the letter was sent. Second, there is a reliable and administratively feasible mechanism for establishing class membership. Whether an individual meets each of the above criteria can be determined through review of MCM's records. MCM's representative testified that its Debt Manager system contains the following information in every consumer's account: (1) the individual's address; (2) the specific letters sent (*e.g.*, a letter containing the judgment clause); (3) the date the letter was sent by MCM's mail vendor; and (4) the date a lawsuit was filed along with the case number. (ECF No. 27-3, pp. 4, 7–9, 12, 14, 16–17, 20, 23). Reviewing this information will, of course,

require some level of individualized inquiry. *See Byrd*, 784 F.3d at 170 ("There will always be some level of inquiry required to verify that a person is a member of a class."). But the need for file-by-file review to identify class members is not fatal to class certification. *See id.* at 171 ("[T]he size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539–40 (6th Cir. 2012))). Nor will such review of MCM's records require "individualized fact-finding or mini-trials." *Carrera*, 727 F.3d at 307; *see also Byrd*, 784 F.3d at 170. The Court, therefore, finds that the class is "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593.

MCM challenges that conclusion in two respects. First, MCM contends that there is no reliable and administratively feasible method for ascertaining the class because "[i]ndividualized inquiry is required to determine who 'received' the Language and when the Language was 'received.'" (ECF No. 28, pp. 11–12). Second, MCM asserts that the class is an "unascertainable fail-safe class" because "[FDCPA] liability is the linchpin of class membership." (*Id.* at 18–19). Neither argument prevails.

### a.   Time of FDCPA Violation—Time Sent Versus Time Received

MCM first argues that the class is unascertainable because identifying class members will require individualized inquiries into who received a letter and when. The merit of that argument depends on the answer to an important question of law: When does an FDCPA violation occur under 15 U.S.C. §§ 1692e or 1692f—at the time a letter is *sent* or the time a letter is *received*? If the former, then MCM's argument fails, as the date of receipt is irrelevant. If the latter, then MCM's argument may succeed, as the difficulty in determining the specific date of receipt for

each plaintiff cuts against ascertainability.[12]  It is thus no surprise that the parties press different

answers to the question.  Butela maintains that an FDCPA claim accrues at the time a letter is

sent, and MCM argues that it accrues at the time a letter is received.  (*See supra* II.B.1.a).  The

Third Circuit has not yet resolved this issue, but district courts within the Third Circuit have

generally followed the time-of-sending approach.[13]  That approach, moreover, has been followed

by a majority of courts across the country.[14]  The Court joins the majority and holds that an

---

[12] The variability in receipt dates would also undermine other Rule 23 requirements, such as typicality.  For example, Butela's claims would not be typical of the claims of class members who, though not yet sued as of the date the letter was sent, *were* sued as of the date of receipt. Such a factual dissimilarity would likely cause litigation of the claims to diverge, particularly as to the key question of FDCPA liability.

[13] *See, e.g., Guevara v. Client Servs., Inc.*, 2011 WL 5082251, at *2 (D.N.J. Oct. 26, 2011); *Smith v. Rubin & Raine of N.J., LLC*, 2009 WL 2143644, at *5 n.4 (D.N.J. July 14, 2009); *Bullock v. Klein*, 2008 WL 11364242, at *5 (E.D. Pa. Oct. 23, 2008); *Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *7 n.4 (E.D. Pa. Apr. 22, 2008); *Schaffhauser v. Burton Neil & Assocs.*, 2008 WL 857523, at *2 (M.D. Pa. Mar. 27, 2008); *Pagan v. Monterrey Collection Servs.*, 2007 WL 966009, at *3 (E.D. Pa. Mar. 29, 2007).  A few other decisions have discussed, but not resolved, the issue.  *See, e.g., Balon v. Enhanced Recovery Co.*, 316 F.R.D. 96, 105 & n. 4 (M.D. Pa. 2016); *Michaels v. NCO Fin. Sys. Inc.*, 2011 WL 2600723, at *2 (W.D. Pa. June 29, 2011); *Agosta v. InoVision, Inc.*, 2003 WL 23009357, at *6 (E.D. Pa. Dec. 16, 2003).

[14] An overwhelming majority of courts have held that an FDCPA violation under Section 1692e or 1692f occurs at the time the letter is sent.  *See, e.g., Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995); *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992); *Munoz v. Rushmore Mgmt. Loan Servs. LLC*, 2017 WL 5629645, at *5 (S.D. Ohio Nov. 22, 2017); *Barlow v. Safety Nat'l Cas. Corp.*, 2014 WL 1327922, at *2 (M.D. La. Mar. 31, 2014); *Goodson v. Bank of Am., N.A.*, 2014 WL 940492, at *1 (M.D. Tenn. Mar. 10, 2014); *Sterling v. Am. Credit & Collections, LLC*, 2012 WL 3553757, at *5 (D. Colo. Aug. 16, 2012); *Boles v. Moss Codilis, LLP*, 2012 WL 12861080, at *13 (W.D. Tex. Jan. 17, 2012); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 676 (N.D. Cal. 2011); *Arvie v. Dodeka, LLC*, 2010 WL 4312907, at *6 n.4 (S.D. Tex. Oct. 25, 2010); *Sadler v. Midland Credit Mgmt., Inc.*, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004); *Bryant v. Bonded Accts. Serv./Check Recovery*, 208 F.R.D. 251, 259 (D. Minn. 2000); *Lee v. Sec. Check, LLC*, 203 F. Supp. 2d 657, 658 (N.D. Miss. 2000).  A minority of courts, mostly within the Second Circuit, have held that a violation occurs at the time the letter is received.  *See, e.g., Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 & n.2 (2d Cir. 1992) (dictum); *Barbero v. Transworld Sys., Inc.*, 2021 WL 2662046, at *4–5 (E.D.N.Y. Jan. 13, 2021); *Maxwell v. Barney*, 2008 WL 1981666, at *2–3 (D. Utah May 2, 2008); *Richard v. Oak Tree Grp., Inc.*, 2007 WL

FDCPA claim premised on a letter with allegedly false, deceptive, or misleading language or unfair or unconscionable language arises at the time the letter is sent, not the time the letter is received.

The analysis necessarily begins with the text of the statute. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) ("When interpreting limitations provisions, . . . 'we begin by analyzing the statutory language.'" (citation omitted)). The FDCPA provides that "an action to enforce any liability" must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). But *when* does a violation occur? The statute does not expressly answer that question, though it does delineate the acts that constitute violations. Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, Section 1692f provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. The thrust of both sections, then, is the act of the debt collector— its "use" of prohibited representations or means to collect a debt. A debt collector engages in such "use" when it sends a letter to a consumer. *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 676 (N.D. Cal. 2011) ("[T]he 'simple act of mailing letters with allegedly misleading information constitutes a 'use' of such prohibited language.'" (citation omitted)). *See generally Use*, The Random House Dictionary of the English Language 1573 (1st ed. 1966) (defining "use" as "to employ for some purpose" or to "put into service"); *Use*, Webster's Third New International Dictionary 2523 (3d ed. 1961) (defining "use" as "to put into action or service"). Therefore, an FDCPA violation occurs at the time the letter is sent (*i.e.*, the time of

---

1238899, at *4–5 (W.D. Mich. Apr. 27, 2007); *Seabrook v. Onondaga Bureau of Med. Econ., Inc.*, 705 F. Supp. 81, 83 (N.D.N.Y. 1989) (dictum); *cf. Benzemann v. Citibank N.A.*, 806 F.3d 98, 103 n.1 (2d Cir. 2015) (criticizing the time-of-sending approach).

"use"). *See, e.g.*, *Irwin v. Mascott*, 96 F. Supp. 2d 968, 976 (N.D. Cal. 1999) ("A debt collector violates the FDCPA by *sending* a notice containing unlawful provisions."). At that time, a consumer has "a complete and present cause of action" under the FDCPA, regardless if he or she is yet aware of it. *Rotkiske*, 140 S. Ct. at 360 (citations omitted); *see id.* at 358 ("[T]he statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, *not the date on which the violation is discovered.*" (emphasis added)).

This conclusion is in accord with the express purpose of the FDCPA—"to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (stating that the FDCPA is a "remedial statute"). Though the "ultimate objective [of the FDCPA] was to protect consumers from harassment by debt collectors, Congress intended to achieve this purpose by regulating the conduct of debt collectors." *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992). Liability under the FDCPA is thus triggered by a debt collector's "use" of prohibited language, rather than the consumer's reaction to such language. *See Boles v. Moss Codilis, LLP*, 2012 WL 12861080, at *13 (W.D. Tex. Jan. 17, 2012) ("The statutory language seeks to prevent all deceptive debt collection practices and refers only to the actions of debt collectors."). The violation occurs at the time of the debt collector's conduct—the time of sending—not the time of the consumer's receipt. After all, the time of sending is the debt collector's "last opportunity to comply with the FDCPA." *Mattson*, 967 F.2d at 261. Upon placing the letter in the mail, the debt collector's "conduct with respect to any violation of the FDCPA [is] complete." *Id.*

Aside from consideration of the text and purpose of the FDCPA, the Court also considers the standard of review applicable to FDCPA claims—the least sophisticated debtor standard. *See Brown*, 464 F.3d at 454. Under that objective standard, a "specific plaintiff need not prove that

*she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Moyer*, 991 F.3d at 470 (citation omitted).  It follows that a specific plaintiff need not prove that he or she actually received an allegedly misleading communication to state a claim under the FDCPA.  *See Herrera*, 274 F.R.D. at 677 ("Th[e] objective [least sophisticated debtor] standard is inconsistent with an analysis that focuses upon the timing of notices and the circumstances under which they are received.").  Rather, consistent with the statutory text and the objective standard of review, a plaintiff states an FDCPA claim by proving that a debt collector sent him or her a letter using language that the least sophisticated debtor would find to be false, deceptive, or misleading or unfair or unconscionable.  The fact—and date—of receipt is irrelevant for purposes of FDCPA liability.[15]  *See, e.g., Boles*, 2012 WL 12861080, at *13; *Herrera*, 274 F.R.D. at 676; *Irwin*, 96 F. Supp. 2d at 976.

As a final matter, the time-of-sending approach is more practical than the time-of-receipt approach.  Courts and parties must be able to determine accrual dates with some degree of certainty.  *See Rotkiske v. Klemm*, 890 F.3d 422, 425 (3d Cir. 2018) (en banc) (stating that statutes of limitations are intended to "fix[] an end point for civil liability," thereby providing "certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities" (citation omitted)), *aff'd*, 140 S. Ct. 355 (2019).  The date of mailing is "easy to determine, ascertainable by both parties, and may be easily applied."  *Mattson*, 967 F.2d at 261. Conversely, the date of receipt may often be impossible to determine, particularly where the

---

[15] To be clear, evidence concerning actual receipt may be relevant to the question of actual damages, should a plaintiff pursue such relief.  *See* 15 U.S.C. § 1692k(a)(1); *see also Walton v. Pereira*, 995 F. Supp. 2d 437, 441 (W.D. Pa. 2014) ("Damages for emotional distress are recoverable under the FDCPA.").  But proof of actual receipt is not a prerequisite to liability under the FDCPA, and it is entirely irrelevant in a case seeking only statutory damages.  *See Walton*, 995 F. Supp. 2d at 441 (explaining that plaintiffs "may collect statutory damages under the FDCPA even if they have suffered no actual damages").

recipient is an individual as opposed to a commercial entity.  *See Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 322 (3d Cir. 2014) ("When the intended recipient is a commercial or legal entity, it may be routine business practice to log incoming mail. . . . . However, one cannot reasonably expect individuals to maintain logs of incoming mail.").  A certain date of sending is, therefore, preferable to an uncertain (and perhaps unknowable) date of receipt.

For these reasons, the Court concludes that an FDCPA claim arises at the time the debt collector sends the letter, not the time the consumer receives the letter.  As such, the process of identifying class members in this case will not require any individualized inquiries about receipt. MCM's first argument against ascertainability fails.

### b.  Fail-Safe Class

MCM next argues that the class is an unascertainable fail-safe class.  "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'"  *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)).  In other words, a fail-safe class "require[s] a court to decide the merits of prospective individual class members' claims to determine class membership."  1 Newberg on Class Actions § 3:6 (5th ed. Dec. 2021 update).  Neither the Supreme Court nor the Third Circuit has yet addressed whether fail-safe classes are categorically precluded from certification.  And this issue has divided other courts of appeals.[16]  The courts denying certification of fail-safe

---

[16] *Compare Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) (stating that fail-safe classes are prohibited), *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) ("A case can't proceed as a class action if the plaintiff seeks to represent a so-called fail-safe class."), *and Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ("[A] class definition is impermissible where it is a 'fail-safe' class . . . ."), *with In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) ("[O]ur precedent rejects the fail-safe class prohibition . . . ."), *and Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (noting that "our circuit's caselaw appears to

classes have generally done so because this type of class creates a 'heads I win, tails you lose' situation—"a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825; *see also* Newberg on Class Actions § 3:6 & n.6 (collecting cases). Fail-safe classes thus "skirt[] the bar of *res judicata*" and the general rule that class actions are "binding on absent class members." *Zarichny*, 80 F. Supp. 3d at 624. Courts have also denied certification of fail-safe classes on ascertainability grounds, reasoning that "the inquiry into class membership would require holding countless hearings resembling 'mini-trials.'" Newberg on Class Actions § 3:6 & n.5 (collecting cases); *see also Zarichny*, 80 F. Supp. 3d at 625 ("Fail-safe classes are one category of classes failing to satisfy the ascertainability requirement." (cleaned up)). Other courts, however, have rejected a rule against certification of fail-safe classes. *See* Newberg on Class Actions § 3:6 & n.8.50 (collecting cases). These courts explain that such a rule would "preclude certification of just about any class of persons alleging injury from a particular action." *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) (citation omitted).

    The Court need not weigh in on this debate. Even if fail-safe classes are generally impermissible, the class in this case is not a fail-safe class. The modified class definition is not "framed as a legal conclusion." *Id.* Nor does it "preclude the possibility of an adverse judgment against class members." *Id.* (citation omitted). The questions of class membership—whether individuals were sent a letter stating that that "[a] judgment could be awarded by the court before the expiration of the discount offer," (ECF No. 27-6, p. 5), and whether they were subject to a lawsuit at the time the letter was sent—are distinct from the questions of FDCPA liability— whether the least sophisticated debtor would find that language to be "false, deceptive, or

---

disapprove of the premise that a class can be fail-safe" (citing *Vizcaino v. U.S. Dist. Ct.*, 173 F.3d 713, 721–22 (9th Cir. 1999))).

misleading" and "unfair or unconscionable,"  15 U.S.C. §§ 1692e, 1692f, and, if so, whether the language resulted from a "bona fide error," *id.* § 1692k(c).  The answer to the former questions may be 'yes,' while the answer to the latter questions may be 'no.'  In other words, individuals can be class members and yet still not have valid claims.[17]  The present class is, therefore, not a fail-safe class, as class membership can be determined without first resolving the merits of the case.  MCM's second argument against ascertainability fails.

### 9.  Conclusion—Rule 23 Analysis

The Court concludes, after conducting the necessary rigorous analysis, that all of the Rule 23 requirements are satisfied.  The following class will be certified under Rule 23(b)(3):

> All Pennsylvania residents who: (i) on or after September 15, 2019, were sent a letter by Midland Credit Management, Inc. that made one or more settlement offer(s), listed an expiration date for the offer(s), and stated a judgment could be awarded before the expiration date of the listed offer(s); and (ii) at the time the letter was sent, had not yet been sued in any court in the United States for the debt identified in the letter.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Butela's Motion for Class Certification (ECF No. 26).  An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4/27/2022
Dated

---

[17] Indeed, MCM anticipates this very result should its assertion of the bona fide error defense prove successful.

37